# Chapter 11

# Massive Changes in Res Judicata on July 1, 2006

§ 11.01  Problems with Res Judicata as it Evolved in Virginia
§ 11.02  Problems Implementing Res Judicata Before
          Court Rules Permitted a Single Form of Civil Action.
§ 11.03  The Rise of the Transactional Test.
§ 11.04  Statutory Developments in Virginia Presaging
          Adoption of a Conduct, Transaction or Occurrence Test
§ 11.05  Rules of Court Also Use the Transactional Approach
§ 11.06  New Rule on Res Judicata Rule as of July 1, 2006
§ 11.07  Outline of How the New Rule is Expected to Work.
§ 11.08  Examples of the New Operation of Res Judicata

Not long after the Supreme Court's decision in *Davis v. Marshall Homes, Inc.*,[1] the Bar raised significant questions about the workability and wisdom, of the prevailing Virginia approach to the topic of claim preclusion: the bar to re-litigation of claims under the doctrine of res judicata.

This Chapter contains sections outlining Virginia law as it stood prior to 2006, turning to the study initiated by Bar groups to determine the core mission of res judicata and how it might better be served in Virginia, and then presenting the new Rule of Court that is scheduled to become effective as of July 1, 2006 for civil case filings thereafter.  The Judicial Council of Virginia, the official policy-making body of the judicial system, unanimously approved a new Rule to alter the operation of res judicata at its October, 2005 session.  The Supreme Court is expected to promulgate the Rule, which will become effective July 1, 2006 — that is, it will apply to cases *filed* after that date (cases brought previously will be tested by the prior law, in order to protect the expectations of parties to those actions as to the preclusive effect, or non-preclusion, as to pre-July 2006 litigations).

## § 11.01  Problems with Res Judicata as it Evolved in Virginia

A committee of an influential Bar study body generated in 2004 a thorough study of the background for use of the res judicata mechanism and its evolution in Virginia.[2]  The Committee recommended approval of a proposal for a statute adopting the "same transaction, occurrence or course of conduct" test in determining whether res judicata bars a subsequent litigation arising out of the same facts.  The Committee concluded that it is very clear that there is a serious problem with the operation of the present doctrine, and that a well-understood solution is available in the form of the conduct, transaction or occurrence test, which is already used in myriad aspects of Virginia law.

---

[1] Davis v. Marshall Homes, Inc., 265 Va. 159, 166, 576 S.E.2d 504, 507 (2003).

[2] Wiley Mitchell, Chair of the Boyd-Graves Conference, appointed a committee composed of Tom Williamson (Chair), Judge Arthur Kelsey, Judge Stanley Klein, Michael Glasser, Robin Wood, John Oakey and Professor Kent Sinclair to study the operation of Virginia's res judicata doctrines. This Chapter of the Guide reflects the conclusions of that committee.

**EXHIBIT**

tabbies®

A

Res judicata embodies a strong public policy to avoid multiple litigations,[3] and is "a fundamental concept in the organization of every jural society."[4] It protects not only individual and corporate litigants from the burdens of trying the same case twice, but also protects society from having to pay for multiple proceedings arising from the same facts.[5]

**Res Judicata's Core Mission.** Claim preclusion bars the assertion of legal or equitable rights of action, *even if they were not specifically resolved in earlier litigation*. A claimant is required to bring all claims relating to the dispute in the first litigation, on pain of being precluded from trying again on a different "theory" in a later action against the same defendant arising from the same facts. Called "merger" when the claimant wins the first suit and "bar" when the claimant loses it, claim preclusion under the doctrine of res judicata treats unasserted claims as being subsumed in the disposition of the related, previously adjudicated, claims. In essence, you can't have two bites at the apple. The law should afford one full, fair hearing relating to a particular problem — but not two.

This basic principle of res judicata in Virginia was best stated a century ago: "Every litigant should have opportunity to present whatever grievance he may have to a court of competent jurisdiction; but having enjoyed that opportunity and having failed to avail himself of it, he must accept the consequences."[6] Thus, the "effect of a final decree is not only to conclude the parties as to every question actually raised and decided, but as to *every claim* which properly belonged to the subject of litigation and which the parties, by the exercise of reasonable diligence, might have raised at the time."[7] Several statements of this underlying principle go back to the earliest formulations of Virginia res judicata law.[8] Once a party's claim on a "subject matter" and the defendant's defenses

---

[3] *Burks Pleading & Practice* § 357, at 672 (4th ed. 1952).

[4] 2 Henry Campbell Black, *A Treatise on the Law of Judgments Including the Doctrine of Res Judicata* § 500, at 760 (1902). *See generally* Allen v. McCurry, 449 U.S. 90, 94 (1980); Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 299 (1917) (Res judicata "is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way, wherever the judgment is entitled to respect".).

[5] See Bill Greever Corp. v. Tazewell Nat'l Bank, 256 Va. 250, 254, 504 S.E.2d 854, 856-57 (1998) (the policy considerations underlying the doctrine of res judicata are: "avoiding a multiplicity of suits, protecting against vexatious litigation, and avoiding the costs and expenses associated with numerous suits on the same cause of action"); Bates v. Devers, 214 Va. 667, 670, 202 S.E.2d 917, 920 (1974) ("res judicata rests upon considerations of public policy which favor certainty in the establishment of legal relations, demand an end to litigation, and seek to prevent the harassment of parties").

[6] Miller v. Smith, 109 Va. 651, 655, 64 S.E. 956, 957-58 (1909).

[7] Smith v. Holland, 124 Va. 663, 666, 98 S.E. 676, 676 (1919) (emphasis added) (*citing* Diamond State Iron Co. v. Alex K. Rarig Co., 93 Va. 595, 25 S.E. 894 (1896); Miller v. Smith, 109 Va. 651, 64 S.E. 956 (1909)).

[8] *See, e.g.,* Southern R. Co. v. Washington, A. & M. V. R. Co., 102 Va. 483, 491, 46 S.E. 784, 787 (1904) (recognizing that res judicata "applies, except in special cases, not only to points upon which the court was actually required, by the parties, to form an opinion and pronounce a

are *decided*, the matter is "not now to be questioned in a *subsequent controversy upon the same subject-matter* between the same parties."[9]

## § 11.2   Problems Implementing Res Judicata Before Court Rules Permitted a Single Form of Civil Action.

**Link to Pleading and Joinder of Claims Rules.**   The scope of res judicata's claim preclusion has always been closely related to the legal system's pleading and joinder rules.   Determining which claims *should* have been brought in earlier litigation largely depends on which claims *could* have been brought.[10]   See Campbell Black, *A Treatise on the Law of Judgments Including the Doctrine of Res Judicata* § 618, at 944 (1902)[11]; Restatement of Judgments §§ 47, 48 (1942)

---

judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time" (*quoting* Diamond State Iron Co. v. Alex K. Rarig Co., 93 Va. 595, 603-04, 25 S.E. 894, 897 (1896)); *McCullough v. Dashiell*, 85 Va. 37, 41, 6 S.E. 610, 612 (1888) ("[W]here every objection urged in the second suit was open to the party within the legitimate scope of the pleadings in the first suit, and might have been presented at that trial, the matter must be considered as having passed in rem judicatam, and the former judgment in such case is conclusive between the parties."); *Withers' Adm'r v. Sims*, 80 Va. 651, 660-61, 1885 Va. LEXIS 105, at *18-19 (1885) ("'[A]ll those matters which were offered and received, or which might have been offered to sustain the particular claim or demand litigated in the prior action, and those matters of defence which were presented or which might have been introduced under the issue to defeat such claim, are concluded by the judgment or decree in the former suit,' for to this extent the authorities certainly do go."); Blackwell's Adm'r v. Bragg, 78 Va. 529, 541, 1884 Va. LEXIS 28, at *21 (1884) (*quoting* Le Guen v. Gouverneur & Kemble, 1 Johns. Cas. 436, 492 (N.Y. 1798)) ("Judge Radcliffe [in *Le Guen*] said: 'The principle, however, extends farther.   It is not only final as to matters actually determined, but as to every other matter which the parties might litigate in the cause, and which they might have had decided.'"); Shenandoah V. R. Co. v. Griffith, 76 Va. 913, 925, 1882 Va. LEXIS 93, at *20-21 (1882) ("The doctrine of res judicata applies to all matters which existed at the time of giving the judgment or rendering the decree, and which the party had the opportunity of bringing before the court.").

[9] Washington, O. & W. R. Co. v. Cazenove,  83 Va. 744, 752, 3 S.E. 433, 437 (1887).   *See* Gimbert v. Norfolk S. R. Co., 152 Va. 684, 689-90, 148 S.E. 680, 682 (1929) ("conclusive of the latter not only as to every question which was decided, but also as to every other matter which the parties might have litigated and had determined, within the issues as they were made or tendered by the pleadings or as incident to or essentially connected with the subject matter of the litigation, whether the same, as a matter of fact, were or were not considered").

[10] In early common law, a "plaintiff, in order to have an effective remedy in the common-law courts, must have been able to fit his problem into or within one of the fixed, established original writs or forms of actions." W. Hamilton Bryson, Bryson on Virginia Civil Procedure 201 (3d ed. 1997).   These forms of action "dictated the type of process, the content of the declaration (the first pleading), the method of proof, and the type of remedy." *Id.* The common law permitted joinder of claims in a single suit so long as all were "proper to the form of action adopted." Henry John Stephen, A Treatise on the Principles of Pleading 5, 7, Second Appendix by the American Editor, at cxvii n.4 (8th Amer. ed. 1859).   What was proper or improper could sometimes be debated, but this much was certain:

[11] *See generally* Allen v. McCurry, 449 U.S. 90, 94 (1980); Hart Steel Co. v. Railroad Supply Co., 244 U.S. 294, 299 (1917) (Res judicata "is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts to the end that rights once established by the final judgment of a court of competent jurisdiction shall be recognized by those who are bound by it in every way, wherever the judgment is entitled to respect").

("A judgment is not conclusive of any matter which, from the nature of the case, the form of action, or the character of the pleading could not have been adjudicated in the former suit").

Common law pleading and joinder rules — in Virginia and elsewhere— limited the reach of res judicata by forbidding the joinder of tort and contract claims in a single suit. Kent Sinclair & Leigh B. Middleditch, Jr., *Virginia Civil Procedure* § 8.6(B), at 483 (4th ed. 2003). At that time, it was "well settled that causes of action arising in tort [could not] be joined with causes of action arising from contracts except in rare instances,"[12] Early American res judicata doctrine evolved in the shadow of these pleading rules and statutes that limited what one could litigate in a single case.

The segregation of law and equity also played a role in the development of claim preclusion principles.[13] Prior to the merger of law and equity in the federal courts, legal and equitable claims "could not be united in the same suit in a court of the United States."[14] Other jurisdictions, like Virginia, permitted legal claims to be asserted in a chancery suit under the "clean up" doctrine, but only at the price of forfeiting the historic right to a jury.[15] While equity could clean up for law, the favor could not be reciprocated. A court sitting at law could not order coercive equitable remedies.[16]

Early claim preclusion principles tracked these limiting pleading and joinder rules. Because what could have been brought in the former suit should have been brought, the merger-bar principle of claim preclusion depended on the procedural

---

[12] Gary v. Abingdon Pub. Co., 94 Va. 775, 779, 27 S.E. 595, 596 (1897); *see also* Kavanaugh v. Donovan, 186 Va. 85, 93, 41 S.E.2d 489, 493 (1947) ("It is elementary that causes of action in tort and contract should not be joined in the same notice of motion or declaration. They are not of the same nature.").

[13] Most American jurisdictions eventually abolished formal common law writs, relaxed pleading and joinder rules, and merged law and equity. New York led the trend when it enacted its 1848 Field Code, which "abolished the writ system, merged law and equity procedures, and simplified pleading in many other ways." W. Hamilton Bryson, Bryson on Virginia Civil Procedure 187 (3d ed. 1997). The Field Code initiated a nationwide trend toward fact pleading. *See* John B. Oakley & Arthur F. Coon, The Federal Rules In State Courts: A Survey of State Court Systems of Civil Procedure, 61 Wash. L. Rev. 1367, 1375 (1986). The federal judiciary expanded upon these procedural reforms in 1938 with the promulgation of the Federal Rules of Civil Procedure. As of 1986, thirty-three states had adopted the Federal Rules of Civil Procedure. *See* Oakley & Coon, *supra*, at 1374, 1377. Jurisdictions not duplicating the Federal Rules nevertheless enacted similar pleading and joinder reforms. *Id.* at 1381-1422. And all but a handful of jurisdictions merged law and equity. *See* Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 8.3, at 480 n. 1 (4th ed. 2003).

[14] *Cherokee Nation v. Southern K. R. Co.*, 135 U.S. 641, 651 (1890). See Restatement (Second) of Judgments § 26, cmt. c(2) (1982) (noting that when "a plaintiff in earlier times was disabled from presenting his full claim in a single action because of formal inhibitions imposed by the historical division between 'law' and 'equity,' or the forms of action, or related procedural modes," the "rules of merger and bar reflected those disabilities and in various situations permitted a plaintiff to present in a second action what he was disabled from presenting in the first").

[15] *See* 1 Dan B. Dobbs, *The Law of Remedies* § 2.6(4), at 170 (1973); see, e.g., Packett v. Herbert, 237 Va. 422, 424 n.5, 377 S.E.2d 438, 441 n.5 (1989).

[16] *See, e.g.*, Simmons v. Miller, 261 Va. 561, 570 n.1, 544 S.E.2d 666, 672 n.1 (2001).

constraints on the first suit. If the later asserted claim could not be raised in the earlier trial or, if it could have been raised, but at an unacceptably high juristic cost (like losing the right to a jury), claim preclusion permitted the second trial— no matter that both trials involved the same contest between the same litigants. Though antithetical to the policies underlying res judicata, the second trial was a necessary accommodation of confused and peculiar procedural rules governing pleadings and joinder.

**The Same Evidence Test Leads to Problems.** During the period when the states restricted a party's ability to plead multiple claims in a single lawsuit, numerous American courts used a focus on whether the "same evidence" was involved in the second case — never as the entire definition of when the "same claim" was being presented, but as one question of many to ask in such situations. Looking at case law from 1850 to 1940, the first Restatement of Judgments used the "same evidence" notion to describe the boundaries of a single cause of action, incapable of being split between two civil actions. *See* Restatement of Judgments § 61 (1942). This approach, however, was but one way of capturing the *could*-have-litigated-*should*-have-litigated principle of res judicata. As the U.S. Supreme Court has summarized it, although the "same evidence" standard was "[one] of the tests" used in the late 1800s, see *The Haytian Republic*, 154 U.S. 118, 125 (1894), "it was not the only one."[17]

More important, the same evidence test served best as "a test of inclusion" rather than as a "test for exclusion."[18] Thus, even in the era when this test was employed in a number of American courts, the test was used to find that the res judicata merger-bar applied when the proof was identical; it was *not* used as a basis for concluding that use of different proof in the second suit meant that res judicata was not applicable. As the first Restatement explained:

> Although it is true that the judgment in the prior action precludes the plaintiff from subsequently maintaining the second action based upon the same transaction if the evidence needed to sustain the second action would have sustained the first action, *the negative is not true.* Although the evidence needed to sustain the second action would not have sustained the first action, the plaintiff may be precluded by the judgment in the first action from maintaining the second action.

Restatement of Judgments § 61, cmt. a (emphasis added).

> Put another way, the identity of evidence supporting the two causes can show that the second action is so closely related to the first that only one lawsuit should be permitted. The lack of identity of evidence, however, does not necessarily mean that the second action should be allowed. Many cases recognize this, and this is the view

---

[17] Nevada v. United States, 463 U.S. 110, 131 n.12 (1983).
[18] Robert C. Casad & Kevin M. Clermont, *Res Judicata: A Handbook on its Theory, Doctrine & Practice* 66 (2001).

reflected in the Restatements. Accordingly, other criteria have to be used to determine whether a second action should be precluded when it did not depend upon the same evidence that would have supported the first action.

Robert C. Casad & Kevin M. Clermont, *Res Judicata: A Handbook on its Theory, Doctrine & Practice* 66 (2001) (citing Restatement (Second) of Judgments, § 24 cmts. a-b, § 25 cmt. b; Restatement of Judgments § 61).

The most recent examination of res judicata in *Davis v. Marshall Homes, Inc*,[19] sharply divided the Virginia Supreme Court not only on the core question of Virginia's formulation of the doctrine, but also on how case law has historically applied it. In *Davis*, the same transaction (a real estate financing plan) spawned two theories of recovery: one in tort, the other in contract. Because the tort claim (lender v. debtors alleging fraud in the inducement arising out of promissory notes) involved different elements of proof than the contract claim (lender v. debtors for nonpayment of the same promissory notes), *Davis* held that res judicata did not apply. Thus, the lender could file the tort suit, lose on the merits, and then file a second suit on the contract claim. Whether different "claims are part of a single cause of action," the Court held, can only be determined by considering "whether the same evidence is necessary to prove each claim."[20] And because the lender in *Davis* limited her first suit to a fraud claim, it did not bar her — after losing the fraud case—from later filing a second suit against the same borrowers alleging breach of contract arising out of the same loan transaction.

The bar became very confused over the application of res judicata in Virginia using the "same evidence" approach. Attorneys with 30 years of experience reported to the Advisory Committee on Rules that they cannot determine when res judicata applies under the current approach. Experienced trial judges with heavy and hotly-contested dockets report that attorneys are struggling in pending cases to apply the current Virginia law on res judicata. The same evidence approach is closely tied with the label "claim-splitting" which often in Virginia means that sometimes a second suit is permitted and sometimes it is not.[21] The perception of attorneys and others is that the "claim-splitting" labels are often arbitrary and that predictability is not strong under the current law. One reason for the confusion is that the same evidence test, if applied literally, precludes res judicata in Virginia, making every claim splittable without any bar to later

---

[19] Davis v. Marshall Homes, Inc., 265 Va. 159, 166, 576 S.E.2d 504, 507 (2003).

[20] *Davis*, quoting Brown v. Haley, 233 Va. 210, 216, 355 S.E.2d 563, 567 (1987). The Court noted "that evidence which is not relevant is not admissible. Most of the evidence necessary to prove plaintiff's fraud action would have been inadmissible at a trial of plaintiff's contract action because of the lack of relevance." Davis v. Marshall Homes, 265 Va. 159, 166-67, 576 S.E.2d 504, 507 (2003). In other words, because evidence of the contract claim would not prove the fraud claim, it was unnecessary for the claimant to assert the contract claim.

[21] "A claim which 'could have been litigated' is one which 'if tried separately, would constitute claim-splitting.'" Davis v. Marshall Homes, 265 Va. 159, 164, 576 S.E.2d 504, 506 (*quoting* Bill Greever Corp. v. Tazewell Nat'l Bank, 256 Va. 250, 254, 504 S.E.2d 854, 856-57 (1998)).

re-litigation. Another source of confusion is that the "same evidence" test is designed to enforce res judicata bars when the evidence is the same, but may be used in Virginia to prevent res judicata where the evidence is different.

**The Basic Defect.** The "same evidence" test operates contrary to the basic principle of res judicata in Virginia that all claims relating to a single nucleus of facts should be presented in the first litigation between two parties. The "same evidence" test — particularly in its Virginia variant, which looks at the evidence one would use to prove each element of each cause of action — almost assures that a plaintiff will never be barred in bringing a second suit in Virginia, because each cause of action has different elements and one can almost always identify proof variations that would follow.

Virginia cases can be read to apply the "same evidence" test in the opposite fashion from that for which the rule was designed in the late 1800s. The "same evidence" test was established as one of several ways to show that a subsequent claim was the same as a prior claim; it was not developed to demonstrate the opposite: that that if any evidence is different in the second suit, the litigation can go forward. Section III above lays out this history. As the rule was originally applied, cases could be barred by several showings, one of which was that the evidence would be identical in a later action.

A fair reading of current Virginia law turns this rule on its head, holding that a subsequent claim cannot be found barred *if any of the evidence on any of the elements of the later case would be different* from that required under the prior litigation. The Committee has been unable to find any other jurisdiction in America that ever adhered to this rule, which takes the narrowest possible test, turns it around, and makes it into an assurance that a second or subsequent litigation will not be barred if any portion of the proof would be different. As applied in all other jurisdictions when this rule was accepted (1880s through the 1950s), under the same evidence test claim preclusion applied "if the evidence needed to sustain the second action would have sustained the first action" filed by the plaintiff.[22] But the *Restatement* equally made clear that "*the negative is not true. Although the evidence needed to sustain the second action would not have sustained the first action, the plaintiff may be precluded by the judgment in the first action from maintaining the second action.*" As noted in Section III above, put another way, the same evidence test operated best as "a test of inclusion" rather than as a "test for exclusion."[23]

Thus, if taken literally, the same evidence test as applied in Virginia comes close to abandoning the goal that — where pleading rules allow setting for a variety of the party's claims — the system should call for a single legal proceeding to ventilate aspects of the claim.

In contrast, most states recognized early in the 20th Century that the fact that "a number of different legal theories casting liability on an actor may apply to a

---

[22] Restatement of Judgments § 61, cmt. a.

[23] Robert C. Casad & Kevin M. Clermont, *Res Judicata: A Handbook on its Theory, Doctrine & Practice* 66 (2001).

given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief."[24]

Under the present Virginia approach, where application of res judicata turns on whether evidence varies given the elements of the legal rights asserted, the doctrine will bar only those legal rights based on the same legal theory and asserting the same grounds for relief using exactly the same evidence. A claim that "could have been litigated" will seldom, if ever, be barred. In one example discussed in case law, a plaintiff could assert claims alleging intentional interference with contract and business expectancies, and conspiracy to injure another in trade or business in separate proceedings without fear of the second proceeding being barred by the principles of res judicata even though the same events gave rise to both claims.[25]

Another example: In any business dispute that spawns multiple theories of recovery, present Virginia law permits separate and successive lawsuits between the same parties on such theories of breach of contract, breach of fiduciary duty, common law conspiracy, statutory conspiracy, common law fraud, constructive fraud, and conversion. Eventually, the statute of limitations will call a halt to successive lawsuits, but that could take years. In general under present law unless all of the elements are identical, res judicata would not prohibit successive suits between the same parties.[26] *This is not good public policy for the business community in Virginia, and not good service to individuals residing in the Commonwealth either.* Other American jurisdictions do not allow abusive re-litigation of the same facts with a different label on them, and have rejected that abuse for over a century.[27]

Present Virginia law requires litigants and judges to compare the specific items of evidence (factual, documentary, etc.) and the rule appears to be that if any item of proof in one case would not have been relevant in the other, the two cases can both be pursued.[28]

---

[24] The Restatement of Judgments (Second) § 24 cmt. c.

[25] Davis v. Marshall Homes, 265 Va. 159, 182, 576 S.E.2d 504, 516 (2003) (Justice Kinser, dissenting).

[26] See Davis v. Marshall Homes, 265 Va. 159, 185, 576 S.E.2d 504, 518 (2003) (Justice Lemons, dissenting).

[27] As Henry Black, of Black's Law Dictionary fame, pointed out in his influential 1902 treatise on res judicata, "in all cases where the plaintiff has his option in the outset to bring tort or contract to recover damages for one and the same injury, upon a state of facts which will support either, an adjudication in one, whichever he may elect, is upon principle a bar to the other." 2 Henry Campbell Black, A Treatise on the Law of Judgments Including the Doctrine of Res Judicata § 745, at 1127 (1902). Thus, an unsuccessful suit asserting breach of contract bars a latter suit for fraud arising out of that contract. *See* Cutler v. Cox, 2 Blackf. (Ind.) 178, 180, 1828 Ind. LEXIS 23 *3 (1828) ("The first inquiry then is, were the causes of action the same? All the counts in the present action, it is true, are founded in tort; but, at the same time, they all set out a contract, and show that this action is brought for a deceit in the performance of that contract."), cited in, Campbell Black, *A Treatise on the Law of Judgments Including the Doctrine of Res Judicata* § 745, at 1128. (1902).

[28] An example of this approach can be seen in Davis, 265 Va. at 166-67, 576 S.E.2d at 507.

## § 11.3 The Rise of the Transactional Test.

To make res judicata work properly, almost every other American jurisdiction has replaced the "same evidence" test with the "conduct, transaction or occurrence" test.

Over time in American jurisdictions, as pleading and joinder rules changed, so too did the application of res judicata. Because "[d]efinitions of what constitutes the 'same cause of action' have not remained static over time,"[29] res judicata necessarily had to adapt. This adaptation evolved alongside pleading and joinder reforms.[30] In perfect symmetry, as the could-have-litigated category broadened, so too did the reach of the should-have-litigated principle.

In the decades after 1940 courts around the country began to realize that with the growing freedom to plead multiple causes of action on various theories in a single lawsuit, the basic question for res judicata purposes should be whether the plaintiff has had the opportunity to bring a particular injury or loss — the gravamen of his claim — to the court. There was a growing recognition that if plaintiff's injury-in-fact was presented in a lawsuit, it made no sense to allow plaintiff to advance one *theory of recovery* relating to the facts and the damages, and save to another day the option to bring another theory to justify relief on the same facts. That approach permits unnecessary multiplication of litigation.

By the 1980's almost all states, and the federal courts, had abandoned the "same evidence" test and adopted a *transactional* test for claim preclusion. Thus, in the Restatement (Second) of Judgments, the American Law Institute revised its summary of how American jurisdictions apply res judicata. It distilled the consensus of both federal and state courts as a clear statement that what fairness requires, and what an efficient litigation system demands, is that a plaintiff be afforded a full opportunity to present all claims arising from an event or transaction, and that the plaintiff be required to advance any *theory* of recovery for the injury in the principal litigation. Under res judicata, therefore, a valid final judgment on the merits concerning a prior claim extinguishes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments, § 24 (1). Whether claims

> are products of the same "transaction" is to be determined by "giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit,

---

[29] Nevada v. United States, 463 U.S. 110, 130 (1983).

[30] As comment a to Section 24 of the Second Restatement notes: "In defining claim to embrace all the remedial rights of the plaintiff against the defendant growing out of the relevant transaction (or series of connected transactions), this Section responds to modern procedural ideas which have found expression in the Federal Rules of Civil Procedure and other procedural systems." *See* U.S. Indus., Inc. v. Blake Constr. Co., 765 F.2d 195, 204 (D.C. Cir. 1985) ("Many preclusion rules are closely entwined with rules of procedure, and the civil rules often are clearly intended to require preclusion." (*quoting* C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4472, at 733 (1982))).

and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."[31]

The Boyd-Graves Committee researched the law of multiple jurisdictions and found that 47 states as well as the federal judiciary have adopted this transactional formulation of res judicata. Only Virginia, West Virginia, and Arizona continue to use the "same evidence" test.[32]

Given its continuity of purpose and rationale, the transactional approach represents a refinement of, rather than a departure from, traditional res judicata principles. Both rest on the same *could*-have-litigated-*should*-have-litigated foundation. Thus, what was "said with respect to this doctrine more than 80 years ago is still true today,"[33] despite its new adaptations.

*Virginia has now made the same changes in the pleading and joinder of claims rules that the other American jurisdictions did early in the 20th century.* It has done so in a series of enactments by the General Assembly starting in 1977 and continuing to the present day, repeatedly using the concept of the underlying transaction, occurrence or course of conduct as the "unit" by which litigation is measured.

*Unfortunately, to date Virginia has not adopted a test for res judicata that reflects the many changes in pleading statutes and rules that have been implemented in the Commonwealth since 1977.* To this history we now turn.

### § 11.04    Statutory Developments in Virginia Presaging Adoption of a Conduct, Transaction or Occurrence Test

**Legislative Wave of Change.** In 1977, the Virginia General Assembly enacted Code §§ 8.01-272 and 8.01-281, permitting the joinder of tort and contract claims and authorizing the pleading of alternative theories of recovery in a single action.[34]

**Basic Pleading for Plaintiffs and Defendants.** These two fundamental statutes govern all of the basic forms of legal claims in Virginia: A plaintiff's claims against a defendant are addressed by Code § 8.01-272, which is structured to allow any and all claims or legal theories *"provided that all claims so joined arise out of the same transaction or occurrence." Claims by defendants, whether*

---

[31] Nevada v. United States, 463 U.S. 110, 130, 131 n.12 (1983), (*quoting* Restatement (Second) of Judgments § 24(2)).

[32] *See generally* Phoenix Newspapers v. Dep't of Corr., 934 P.2d 801, 806 (Ariz. Ct. App. 1997); Slider v. State Farm Mut. Auto. Ins. Co., 557 S.E.2d 883, 888 (W.Va. 2001); Ariz. R. Civ. P. 13; W. Va. Rule 13; John B. Oakley & Arthur F. Coon, The Federal Rules In State Courts: A Survey of State Court Systems of Civil Procedure, 61 Wash. L. Rev. 1367, 1377 (1986). Of these jurisdictions, both West Virginia and Arizona have adopted the Federal Rules. Neither state, however, has yet realized just how inconsistent their res judicata approach is both historically and analytically from the Federal Rules of Civil Procedure.

[33] Nevada v. United States, 463 U.S. 110, 129 (1983).

[34] *See* Powers v. Cherin, 249 Va. 33, 37, 452 S.E.2d 666, 668 (1995) (recognizing that "§ 8.01-272 overruled the long-standing prohibition against joinder of tort and contract claims found in Virginia case law").

*as counterclaims against the plaintiff, or as cross-claims against co-party defendants,* are controlled by Code § 8.01-281, which allows the pleading of "alternative facts and theories of recovery against alternative parties, *provided that such claims, defenses, or demands for relief so joined arise out of the same transaction or occurrence.*" Thus these two statutes address the broad range of claims in Virginia litigation today, and both have applied the central "transaction" test since 1977.

These statutes represented a "radical departure" from the common law by clearly recognizing the propriety of litigating multiple diverse claims in a single proceeding. The Supreme Court remarked on the great difference between the restrictions of the common law and the current Virginia statutes in *Fox v. Deese.*[35]

**Later Claims and Amendment.** Numerous other statutes in Virginia use the concept of the same transaction and occurrence as a measure of what the "same claim" actually is in Virginia today. Perhaps the most important of these are the *amendment statutes* passed by the Generally Assembly. These two provisions, Code §§ 8.01-6 and 8.01-6.1, deal with the common situation where a party pleads in a different legal theory or different "cause of action" later in a case, *and the question arises whether it is the "same claim" as originally advanced*—the issue is important because if the claim is "the same" then the statute of limitations was tolled upon the filing of the original suit. These statutes control whether a claim is forever barred.

Thus the amendment statutes apply in a core aspect of Virginia law a definition of exactly what is the "same claim." In these enactments, the General Assembly has twice taken the position that the defining question is whether the same conduct or transaction was raised in the original action. Code § 8.01-6, in addressing the amending of pleadings and the "relation back" of a later claim to the "original pleading," provides that the very first issue and the bedrock test is whether *"the claim asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth in the original pleading."*

More recently, the General Assembly again used this test in a section specifically addressing the situation where a party comes up with *new versions* of the claim months or years after the first claim was brought. Code § 8.01-6.1, dealing with pleadings "changing or adding a claim or defense" requires that the first and fundamental issue to be determined is whether *"(i) the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth in the original pleading."*

Thus, in the view of the General Assembly, by previously bringing any claim on the same transaction, the party has made the core grievance a part of the litigation, and any variation on the cause of action, legal theory or elements of a specific claim for recovery are merely variants of the way to demand relief for

---

[35] Fox v. Deese, 234 Va. 412, 362 S.E.2d 699 (1987). *See also* Kamlar Corp. v. Haley, 224 Va. 699, 707, 299 S.E.2d 514, 518 (1983). Consider too Va. Code Ann. § 8.01-6.1, enacted in 1996. It likewise used the "same transaction or occurrence" test to determine whether an amendment related back to the time of filing of the initial pleading for purposes of the statute of limitations.

the underlying injury-in-fact, plaintiff's actual damage or loss. If the transaction is the same, it's the same claim.

**Statute of Limitations Use of the Transactional Test.** The same "transactional" measure of what a proper unit of litigation is has been adopted by the General Assembly for measuring the statute of limitations on counterclaims by a defendant against a plaintiff, and for cross-claims by one defendant against another defendant. Code § 8.01-233 defines the commencement date of litigation in Virginia for both counterclaims and cross-claims by reference to when *the transaction* was first placed before the court for consideration in the first pleading by the plaintiff. It provides that "[i]f *the subject matter of the counterclaim or cross-claim arises out of the same transaction or occurrence* upon which the plaintiff's claim is based, the statute of limitations with respect to such pleading shall be tolled by the commencement of the plaintiff's action."

**Joinder of Multiple Claims.** More recently still, the General Assembly applied the factual transaction test to define what the "same claim" is for purposes of joinder of six or more lawsuits arising from a common tort. In Code 8.01-267.1 the Legislature authorized consolidation of multiple claims where "[s]eparate civil actions brought by six or more plaintiffs involve common questions of law or fact and *arise out of the same transaction, occurrence or series of transactions or occurrences.*" The same test is applied in Code § 8.01-267.4 (transfer and consolidation of multiple lawsuits which "arise out of the same transaction, occurrence, or the same series of transactions or occurrences").

**The Nonsuit Statute Uses the Transaction Test.** Virginia's nonsuit statute, as revised in 1977 and more recently amended, today requires use of the transaction test to determine whether a counterclaim, cross-claim or third-party claim involves the same claim that plaintiff put forward in the original pleading. The test under the current statute for determining whether to allow a nonsuit with other claims pending requires a determination whether a "counterclaim, cross claim or third-party claim . . . arises out of the same transaction or occurrence as the claim of the party desiring to nonsuit."[36]

**Litigation and Non-Litigation Statutes Use the Transaction Test.** All of the foregoing statutes deal with core litigation issues, and they arise frequently. The fact that the General Assembly has adopted these provisions, and that the practicing bar does not report any festering crises in the application of these basic procedures, is strong evidence that the transaction test is workable, and is deeply woven into current Virginia law.

Many other statutes passed in recent years by the General Assembly use the transaction test for determining the scope of claims. The Committee located over two dozen statutes applying the transaction or occurrence test in such diverse subject areas as immunity for corporate officers of charitable organizations under Code § 8.01-220.1:1 (limits on "damages assessed for acts taken in his capacity

---

[36] Va. Code Ann. § 8.01-380(D).

as an officer, trustee or director and arising out of a single transaction, occurrence or course of conduct"); general liability of corporate officers and directors ("damages assessed against an officer or director arising out of a single transaction, occurrence or course of conduct shall not exceed the lesser of . . . "); other corporate officer liability situations under Code § 13.1-870.1, § 13.1-870.2 and § 13.1-1025 (all defining claims as "arising out of a single transaction, occurrence or course of conduct"); compensation of attorneys in criminal cases under Code § 19.2-163 (determining the litigation "unit" for compensation purposes based on "violations arising out of the same incident, occurrence, or transaction"); several statutes dealing with multiple traffic violations, such as Code § 33.1-56.3 (limiting charges in alternative sections by precluding dual prosecutions for "actions arising out of the same transaction or occurrence") and Code § 46.2-334.01 on license restrictions (limiting penalties for "multiple convictions arising out of the same transaction or occurrence"); and failure to pay tolls under Code § 46.2-819 (barring multiple charges "arising out of the same transaction or occurrence").

Clearly, the same transaction test is workable, is commonly applied in Virginia, and serves as an intuitively satisfying and readily applied measure of what a claim is. It is feasible to apply this standard now that pleading multiple and inconsistent claims is permitted in Virginia, but res judicata standards have not been updated to reflect these developments.

## § 11.5 Rules of Court Also Use the Transactional Approach

The most basic rule of court addressing the nature and content of pleadings, Rule 1:4, uses the concept of the conduct or transaction in framing its provision on the appropriate range of matters that can be pled in a single case, allowing: "alternative facts and theories of recovery against alternative parties, provided that such claims, defenses, or demands for relief so joined arise out of the same transaction or occurrence."

Other Rules of Court use the same concept. *See, e.g.,* Rule 3:10, which allows third-party claims to be added to a litigation so long as the new claim arises "out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff." Every step of the third-party practice in Virginia is similarly limited, such that other claims between the defendant and third-party may be litigated in the action if they are claims "arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff."

Rule 7B:3, the basic pleading rule in General District Court, allows claims involving "alternative facts and theories of recovery against alternative parties, provided that such claims, defenses, or demands for relief so joined arise out of the same transaction or occurrence."

The Bar study group concluded that in era of ever-increasing dockets and fiscal limitations requiring careful use of judicial resources, we should have a good reason before departing from the maxim that one trial should suffice. The transactional approach applied by forty-seven states, as well as the federal courts, protects the policies underlying res judicata while providing exceptions for the unique cases

where a second trial promotes public justice. It avoids uncertain labels like "unsplittable claims" and avoids the abuses of multiple re-litigation that can be perpetrated by parties sheltered under the existing "same evidence" test.

**A Change Would be Compatible with Virginia Law.** While current Virginia law does not apply a transaction test for basic res judicata issues, there are prior decisions of the Supreme Court where the concept of a definable factual transaction has been used in connection with res judicata analysis. "For the purposes of res judicata, a 'cause of action' may be defined broadly 'as an assertion of particular legal rights which have arisen out of a definable factual transaction.'"[37]

Thus, while it is not current Virginia law, a change to a transaction-based test for application of res judicata would not be lacking in important antecedents in Virginia law. Using transactional language, various prior cases implicitly recognized that, as pleading and joinder reforms widened the permissible scope of litigation, res judicata should operate to narrow the permissible scope of relitigation. A change to a transaction-based test for res judicata would therefore be compatible with many aspects of existing and prior Virginia law.

For these reasons, the Bar study concluded that adoption of a transactional test to regulate the assertion of claims by plaintiffs in civil cases was desirable. The specific language should reflect the similar "transaction and occurrence" formulations in various Code provisions, such as §§ 8.01-6, 8.01-6.1, 8.01-272 and 8.01-281 and should be consistent with the Restatement (Second) of Judgments § 17 *et seq.*

Some 47 of the 50 states have adopted the "conduct, transaction or occurrence" test to determine whether a prior litigation presented the same "claim" for purposes of applying res judicata ("claim preclusion").

---

[37] Bates v. Devers, 214 Va. 667, 672 n.8, 202 S.E.2d 917, 921 n.8 (1974). Similar language appeared in more recent opinions. *See, e.g.,* Allstar Towing, Inc. v. Alexandria, 231 Va. 421, 344 S.E.2d 903 (1986); Waterfront Marine Constr. v. North End 49ers Sandbridge Bulkhead Groups, A, B & C, 251 Va. 417, 434, 468 S.E.2d 894, 904 (1996).

# Res Judicata:
# State Approaches as of 2004



■ **Conduct, Transaction or Occurrence Test**
■ **Same Evidence or Elements Test**

## § 11.6 New Rule on Res Judicata Rule as of July 1, 2006

The Judicial Council of Virginia has unanimously approved a new Rule of Court as rule set forth below concerning the definition of a cause of action for purposes of the preclusion doctrine of res judicata. The Supreme Court is expected to Act on the new Rule in time to allow for an effective date of July 1, 2006.

The new Rule spells out the standard to be applied in deciding the effect of a prior judgment by focusing (as do 48 other states) upon whether the same "conduct, transaction or occurrence" has been litigated previously by the same parties. This section sketches the background of the new rule.

After consideration of the Boyd-Graves report, the Supreme Court permitted the Advisory Committee on Rules of Court to develop a rule of court to implement the proposed policy. The Advisory Committee studied both lengthy and fairly short alternatives in formulating a draft rule, and overwhelmingly supported the change to refine the operation of res judicata, and to provide more predictable results. The Committee concluded that going forward with this proposal will achieve a major and much-needed improvement in the operation of the litigation system in Virginia by defining the operation of res judicata more clearly and workably, and avoiding needless re-litigation of the same facts in multiple lawsuits. The new rule is designed to implement the basic principle of res judicata in Virginia that all claims relating to a single set of facts should be presented in the first litigation between two parties, so that Virginia citizens and businesses are not subject to multiple lawsuits relating to the same transaction.

**Background.** Res judicata is a judge-made doctrine, and the present proposal for distillation of the governing provisions in a Rule of Court is in accord with that principle. The present law of collateral estoppel or "issue preclusion" is not affected by the presently proposed rule, which deals only with res judicata (claim preclusion) in a second suit.

After the Rule was considered in detail by the Judicial Council at its June 20, 2005 meeting, it was published statewide for public comment. No opposition to the substance of this change was received from anyone. The Litigation Section of the Virginia Bar Association sent a letter endorsing the proposal. The only "negative" response from the entire Commonwealth was a general district judge's question whether adopting the change (which this writer endorsed on the merits) in a rule of court was the best way to achieve the goal. The Judicial Council at its October 24, 2005 meeting expressly considered that issue, and concluded that the Court was right to contemplate using a rule of court for this purpose: many existing rules address who must bring what claims in Virginia courts, and at various times in the past the Court has issued rules on such topics as counterclaims, intervention, dilatory pleas, and the like, which changed the prior common law limitations and requirements. The use of a Rule of Court has the advantage that it is not dependent upon the parties' framing of the issues in any individual case, and peculiarities of the record and appellate posture in which procedural issues such as this reach the Court.

The Judicial Council deliberations also included note that the planned rule is prospective in two senses. First, it will not be effective until July 1, 2006, allowing ample time for the change in pleading requirements to be absorbed by the bar. Second, the new rule will only apply to cases *commenced* after that date, hence there will be no retroactive cut-off of claims in cases filed prior to that date in which a party may have relied on the former freedom to bring multiple lawsuits arising from the same grievance.

Res judicata is not a topic on which the Virginia General Assembly has legislated in the past, and study of state codes around the country indicates that no jurisdiction treats this topic as a matter on which the legislature should exercise superintendence. Rather, determining the scope of final judgments, their preclusive effect, and their finality, is a core aspect of the role of the judiciary. Hence using a Rule of Court to embody this doctrine is in accord with the Court's Constitutional power to issue rules regulating the practice of litigation in Virginia's courts, as further spelled out in the statutes conferring powers on the Court to issue rules.

**Provisions of the Rule.** The planned Rule has three provisions that merit separate note. First, the proposed rule uses the concept of the "conduct, transaction or occurrence" litigated in the first case as the definition of the essence of the prior claim for res judicata purposes. This accords with the original report of the Bar study group, and is by far the best summary of the governing principles. The Advisory Committee was unanimous in concluding that the complete phrase, "conduct, transaction or occurrence," is well tested in American law as well as Virginia practice, and is the phrase used in the two most

recent statutes passed by the General Assembly in the last decade where the scope of a cause of action is defined: Code § 8.01-6 (misnomer and adding parties in a suit on the same claim) and Code § 8.01-6.1 (amendment of pleadings will "relate back" to the time of the original filing if it's the same cause of action, defined as the "same conduct, transaction or occurrence" set forth in the initial pleading). The Committee felt strongly that using this established three-part definition would be the most clear and readily applied formula, lending predictability and stability to the doctrine. The Judicial Council unanimously agreed.

Second, the Rule as unanimously approved by the Judicial Council in subparagraph (b) adopts a phase-in date of July 1, 2006: it provides that any judgment entered in a Virginia proceeding commenced on and after that date will be preclusive of future claims based on the same conduct, transaction or occurrence. The Advisory Committee did not believe there would be a constitutional impediment to making the proposed Rule retroactively effective, but concluded that there could be unfairness in such an approach in those cases where a party has made strategic "claim splitting" decisions based on the existing case law (particularly in the two years since the *Davis v. Marshall Homes* decision) such that making the rule change prospective was the best course. This approach will produce the desired efficiency starting immediately upon its effective day, and will provide for all future cases the proper incentives to resolve all claims in a single lawsuit. July 1, 2006 has been selected by the Judicial Council since that provides ample time for litigants and counsel to integrate consideration of the new provision into litigation decision-making, and this date is well after the effective date of the statutory changes and rules revisions making both legal and equitable claims available in a single form of civil action. Thus July 1, 2006 provides a logical and unhurried point to implement the requirement that all claims arising from one set of facts be litigated in a single case.

Third, the recommended Rule contains in subparagraph (c) two express reservations about the splitting of claims. Research has shown that there is recognized in other jurisdictions, and the Restatements, the doctrine articulated decades ago in Virginia by the case of *Carter v. Hinkle*,[38] that resolving the property damage claims arising from an accident separate from the personal injury claims from the same event does not render the operation of res judicata unworkable, and has some advantages in an era of mandatory auto insurance. Hence the proposed rule leaves that option undisturbed (the claims can be joined but need not be). Also, it appears that the policy of the General Assembly under the Mechanics' Lien laws allows multiple claims relating to work and materials and there is no intention to disturb existing practice in that detailed statutory regime, hence there is a provision stating that present practice is preserved.

Subparagraph (d) similarly heads off any implication that the Virginia law of privity is altered in any way by the adoption of the conduct, transaction or occurrence test. The doctrine of privity is fairly narrow in Virginia, and case specific. No bar study — and, indeed, no anecdotal reports — have ever

---

[38] Carter v. Hinkle, 189 Va. 1, 52 S.E.2d 135 (1949).

suggested that the present Virginia doctrine of privity, as explicated in cases such as *Nero v. Ferris*,[39] causes any difficulties in applying claim preclusion doctrines in Virginia, and hence the Rule states that the operation of this doctrine is unaffected.

**Legislative Background.** The proposed Rule effectuates Code §§ 8.01-272 and 8.01-281, enacted in 1977, permitting the joinder of tort and contract claims and authorizing the pleading of alternative theories of recovery in a single action. Under statutes and Rules already approved in 2005 by the General Assembly and the Supreme Court, all claims may be brought in a single form of civil action commencing January 1, 2006. Other statutory changes in recent years use the conduct, transaction or occurrence approach in defining claims. *See* Code § 8.01-6 and § 8.01-6.1, dealing with the common situation where a party pleads in a different legal theory or different "cause of action" later in a case, and the question arises whether it is the "same claim" as originally advanced. These Code sections apply the bedrock test of whether the claim asserted "arose out of the conduct, transaction, or occurrence set forth in the original pleading." This test applies under several other statutes in Virginia with respect to amendment of pleadings, adding of parties and claims, and in various statute of limitations contexts under existing provisions, and it applies by statute in multi-claimant cases and under the nonsuit statute. The proposed Rule would apply the same test in res judicata issues.

The proposed Rule, in substance, provides that the cause of action in the prior proceeding will be the conduct, transaction or occurrence upon which that proceeding was based, without regard to the particular rights or legal theories specifically pled, the legal elements or the evidence upon which any claims in the prior proceeding depended, or the remedies sought. The determination of what factual grouping constitutes the "conduct, transaction or occurrence" out of which the original claim arose is not dictated by the planned Rule, and will involve considerations such as whether the facts are related in time, place, and the participants, whether their treatment as a unit conforms to common usage and understanding, the parties' expectations, or business understanding or usage, in light of the pleadings in the original case.

**Rule Number Proposed.** The Judicial Counsel determined that the proposed Rule should be placed in Part One of the Rules, in order to be sure that this principle is applicable in general district court proceedings as well as those in the circuit court. The rule is applicable in civil cases only, which is expressly stated in the body of the rule. Rule 1:6 has been reserved for future use for many years, and it is proposed to use that number for the new Rule. Set forth below is the proposed rule:

---

[39] *Nero v. Ferris*, 222 Va. 807, 284 S.E.2d 828 (1981).

### Rule 1:6 Res Judicata Claim Preclusion

(a) *Definition of Cause of Action.* A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought. A claim for relief pursuant to this rule includes those set forth in a complaint, counterclaim, cross-claim or third-party pleading.

(b) *Effective Date.* This rule shall apply to all Virginia judgments entered in civil actions commenced after July 1, 2006.

(c) *Exceptions.* The provisions of this Rule shall not bar a party or a party's insurer from prosecuting separate personal injury and property damage suits arising out of the same conduct, transaction or occurrence, and shall not bar a party who has pursued mechanic's lien remedies pursuant to Virginia Code § 43-1 *et seq.* from prosecuting a subsequent claim against the same or different defendants for relief not recovered in the prior mechanic's lien proceedings, to the extent heretofore permitted by law.

(d) *Privity.* The law of privity as heretofore articulated in case law in the Commonwealth of Virginia is unaffected by this Rule and remains intact. For purposes of this Rule, party or parties shall include all named parties and those in privity.

## § 11.07  Outline of How the New Rule is Expected to Work.

The new rule is subject to Code § 8.01-428, which allows the invalidation of a prior judgment in a number of very restricted situations, such as fraud on the court. Subject to that statutory possibility for declaring the judgment void, a valid and final judgment in a civil action will be conclusive under new Rule 1:6 between the parties, except on appeal or other direct review, in accord with the following principles:

**Preclusion by Merger in Prior Adjudication.** If the prior judgment established liability on a party's claim, all rights of a claimant to remedies that were available in the original action against the party held liable in that action with respect to all or any part of the transaction or occurrence out of which the action arose are extinguished and merged in the judgment. The claimant cannot thereafter maintain an action on the original claim or any part thereof for remedies that were available against a party in the prior action; provided, of

course, that a new claim may arise on the judgment. In an action upon the judgment, the party against whom the judgment is rendered may not rely upon defenses that were interposed, or might have been interposed, in the first action.

If the new rule is interpreted in accord with the Restatement of Judgments and the mainstream interpretation nationally, a prior judgment establishing liability on a claim will not extinguish a claimant's right to maintain a subsequent action if:

　　　(i) The parties have agreed that the claimant may split the claim, or the party against whom a later claim is pled has acquiesced therein; or

　　　(ii) The court in the first action expressly reserved the claimant's right to maintain the second action; or

　　　(iii) The claimant was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the court in the prior action or restrictions on its authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief.

**Preclusion by Bar of Prior Adjudication.** If the prior judgment found that there is no liability on a claim, all rights of the claimant to remedies that were available in the prior action against any other party to that action with respect to all or any part of the transaction or occurrence out of which the action arose are extinguished and the judgment bars a subsequent action. While not spelled out in the rule, national law applying the same doctrine provides three very limited exceptions:

　　　(i) the judgment is one of dismissal for lack of jurisdiction, for improper venue, or for nonjoinder or misjoinder of parties; or

　　　(ii) the judgment rests on the prematurity of the action or on the claimant's failure to satisfy a precondition to suit; or

　　　(iii) the claimant elects to nonsuit the claim without prejudice or the court directs that the claim be otherwise dismissed without prejudice.

Whether these exceptions will be recognized in Virginia remains uncertain.

**New Evidence, Legal Theories or Remedies.** When a prior judgment has preclusive effect under subsections this new Rule, the claim will be deemed extinguished regardless of whether the claimant is prepared in the second action to present evidence or theories of the case not presented in the first action, or to seek remedies or forms of relief that were available but not demanded in the first action.

**Scope of "Conduct, Transaction or Occurrence."** The canons of construction for determining what factual grouping constitutes the "conduct, transaction or occurrence" out of which the original claim arose are not spelled out in new Rule 1:6. However, in the other states and the federal courts, which apply the same test as is now applicable in Virginia under this new Rule, the determination is made pragmatically, giving weight to such considerations as whether the facts are related in time, place, origin, actions, participants or

motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to common usage and understanding, the parties' expectations, or business understanding or usage.

**Exceptions.** To protect two very specialized concerns, the new Rule in subdivision (c) states two narrow exceptions to the broad rule of preclusion of all claims arising from the same event after an initial lawsuit. First, the drafters provided that the Rule will not operate to bar a party or a party's insurer from prosecuting separate personal injury and property damage suits arising out of the same conduct, transaction or occurrence. This provision follows former Virginia law. Second, the new Rule will not bar a party who has pursued mechanic's lien remedies pursuant to Virginia Code § 43-1 *et seq.* from prosecuting a subsequent claim against the same or different defendants for relief not recovered in the prior mechanic's lien proceedings, to the extent heretofore permitted by law.

**Privity.** This law of privity as heretofore articulated in case law in the Commonwealth of Virginia is unaffected by this Rule. The Judicial Council added to the Rule the last sentence further explaining this principle: "For purposes of this Rule, party or parties shall include all named parties and those in privity."

## § 11.08  Examples of the New Operation of Res Judicata

**Exceptions and Traditional Limits on Res Judicata are Preserved.** The res judicata rule approved by the Judicial Council makes the important changes discussed above, but also preserves the safety-valves in present Virginia law for unusual cases where it would be improper or unfair to have a prior adjudication preclude a later claim. The examples in the table below indicate how the reform would—and in some cases would not—change outcomes:

| SCENARIO | PRESENT OUTCOME | EFFECT OF NEW RULE |
|---|---|---|
| ❶ Case #1 is for specific performance of contract (a form of equitable relief), seeking conveyance of land. Case #2, the next year, is for specific performance of the same contract, seeking conveyance of additional land or an access easement across the additional land. | The second suit is barred, since the cause of action, form of relief (specific performance and conveyance of land), and governing agreement are all the same. See *Flora, Flora & Montague Inc., v. Saunders*, 235 Va. 306, 367 S.E.2d 493 (1988). | No change. |
| ❷ Case #1 charges D with breach of contract. Case #2 is a claim by the same P for fraud against the same D arising from the exact same facts. | The second suit is NOT barred under present law because the legal elements and proof in the two cases will be somewhat different given the distinct causes of action involved. See | If the facts are indeed the same, under the new Rule the second case would be barred: a party must bring all THEORIES for relief arising out of one factual situation in |

| | *Davis v. Marshall Homes*, 265 Va. 159, 576 S.E.2d 504 (2003). | the first lawsuit. ***This is the basic change effectuated by the new Rule.*** |
|---|---|---|
| ❸   Case #1 seeks an injunction in equity based on D's interference with access to P's home over a driveway easement. Case #2 a year later seeks damages at law for property loss caused by the same interference with access to P's property. | The second suit was NOT traditionally barred in Virginia, because the cases were on different sides of court. See *Wright v. Castles*, 232 Va. 218, 349 S.E.2d 125 (1986). | Since all relief is available in a single civil action under the one-form-of-action reform in 2006, the second case would be barred under new Rule 1:6. |
| ❹   Case #1 seeks an damages at law based on D's interference with access to P's home over a driveway easement. Case #2 in equity seeks an injunction barring interference with access over the driveway. | The second suit was NOT previously barred in Virginia, because the proceedings were on two different sides of court, and the injunction was not available in the original damage action at law. Res judicata would not bar a later claim which could not have been brought in the prior action. | Now that it is permissible in Virginia to plead for both equitable relief and legal relief in the same case, the result under prior law has changed: the second suit is barred *because the injunction was available in the first case.* |
| ❺   A doctor does a terrible job treating the patient. Case #1 is the doctor's contract case for non-payment of the $200 bill. The patient does not contest the obligation, and judgment is entered. Case # 2 is a $200,000 medical malpractice claim by the patient several months later. | The second suit is NOT presently barred because the issue of malpractice was not pled by the patient in the first litigation, and was not necessary for the court to consider in Case #1. See *Snead v. Bendigo*, 240 Va. 399,397 S.E.2d 849 (1990) (denying collateral estoppel effect to the first judgment). | No change. The new Rule does not change the law of collateral estoppel. Also, the proposed statute does not alter the present rule that counterclaims in Virginia are NOT compulsory. |
| ❻   After a car crash, Case #1 (by the plaintiff OR his insurer) seeks recovery for property damage to the car. Case #2 is a claim made a year later by plaintiff for personal injuries arising from the same crash. | The second suit is NOT presently barred because the gravamen of the injury in the first case is damage to property, which is distinct from the injury to plaintiff's person (different claim). See *Carter v. Hinkle*, 189 Va. 1, 52 S.E.2d 135 (1949). | No change. Under *Carter*, injury to one's car is a different transaction from injury to one's own body. This doctrine is preserved in the exceptions set forth in Rule 1:6(c). |
| ❼   Case #1 is a personal injury claim for a broken leg | Case #2 is barred under existing law. Plaintiff must | No change. |

| | seek relief in Case #1 for all of the physical consequences of the injury caused in the first instance by defendant, even if some will not manifest themselves until later in plaintiff's life | |
|---|---|---|
| resulting from a car crash. After that case ends, Case #2 is a personal injury claim arising from the same crash alleging that the plaintiff's leg has healed but *now has developed arthritic degeneration* in the area around the broken bones. | | |
| ❽ Case #1 charges defendant with causing plaintiff's an asbestosis condition. After that case ends, Case #2 is filed based on the plaintiff's later development of lung cancer from asbestos exposure on the same facts as Case #1. | Same as No. ❼ | No change. |
| ❾ Case #1 is a claim under the mechanic's lien laws. Case #2 is a further claim relating to the same project. | The drafters of Rule 1:6 were informed that in some circumstances "deficiency" actions or other follow-on claims are permitted in mechanic's lien practice, where complete relief has not previously been afforded. | By the final sentence of the exceptions section of the Rule, 1:6(c) all rights that participants in a project subject to the mechanics lien laws may have to bring multiple actions for relief are preserved. |
| ❿ Case #1 is against defendants A and B. Case #2 is against defendants A and C, on the same facts and the same cause of action. | Case #2 is barred as to defendant A because s/he has already been sued arising from this transaction. As to defendant C, a non-party in case #1, there is no preclusion of plaintiff's claim unless C was in privity with one of the defendants in the first suit. | No change. The rules of privity are not affected by this new Rule. See Rule 1:6(d). Res judicata only operates where the parties are the same, or where a party in privity with the present litigant participated in the prior action. Privity is defined in case law, and not by statute. |

The foregoing examples indicate that the proposed statutory revision will not change the fact that sometimes one trial will not suffice, making it necessary to preserve the option of a second trial relating to the same facts. For example, when a litigant cannot seek equitable relief in a pending law case, he must be given the opportunity to file a separate chancery action to resolve the equitable claim. See Restatement (Second) of Judgments § 26(1)(c). Similar concerns exist when subrogation principles segment a single transaction into severable litigation units. A claimant in a car wreck case, for example, should not be barred from filing a suit for personal injuries simply because the subrogated

insurer chooses to seek a separate recovery for insured property losses. The transactional approach acknowledges this unique situation.[40] Thus the current Virginia law reflected in such cases as *Carter v. Hinkle*[41] will not be changed by this proposal.

In addition, all of the ordinary caveats to res judicata likewise apply to the transactional approach, thereby preserving the historic limitations on the doctrine. Claim preclusion, for example, does not apply to invalid or non-final judgments, Restatement (Second) of Judgments § 17, to dismissals for lack of jurisdiction, for improper venue, or for nonjoinder or misjoinder of parties, Restatement (Second) of Judgments § 20(1)(a), or to nonsuits and dismissals without prejudice, Restatement (Second) of Judgments § 20(1)(b), to dismissals for prematurity or some other violation of a precondition to suit, Restatement (Second) of Judgments § 20(2). Nor does claim preclusion apply where the parties to the first suit agreed to waive its preclusive effect on later suits or where the court in the first suit expressly withheld any preclusive effect of its judgment, Restatement (Second) of Judgments § 26(1)(c).

---

**FINAL NOTE: Collateral Estoppel or "Issue Preclusion" is Not Affected.** Particularly in older case decisions, the term *res judicata* has sometimes been used to refer to both issue *and* claim preclusion. Issue preclusion bars relitigation of common factual issues involving the same or related parties. Virginia has an often-articulated multi-part test for determining whether collateral estoppel bars relitigation of a fact previously decided. That issue is not currently causing difficulty in Virginia practice, and no proposal for change was warranted regarding collateral estoppel. The Rule scheduled to become effective July 1, 2006 deals only with res judicata and claim preclusion in a second suit, *not* collateral estoppel.

---

[40] *See* Restatement (Second) of Judgments, § 37 cmt. d & illus. 6 (discussing cases in which "a person has a loss that is covered by insurance and subject to subrogation in favor of the insurer and another loss that is not so covered, such as a person who in one accident suffers property loss which is insured and also personal injury the claim for which remains his own. . . . Under the rule of this Section, a judgment favorable to the obligor in these circumstances is not preclusive against the transferor as to the issues determined in the action.").

[41] Carter v. Hinkle, 189 Va. 1, 52 S.E.2d 135 (1949).